UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
                                     :

EXXON MOBIL CORPORATION,        :       11 Civ. 2829 (MGC)

                            :

               Plaintiff,       :

                            :

       -against-             :

                           :

TREDEGAR CORPORATION,        :

                            :

             Defendant.     :

                            :

------------------------------------------------------------------ x

## DEFENDANT TREDEGAR CORPORATION'S
## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
## OF ITS MOTION TO DISMISS THE COMPLAINT

Michael C. Ledley, Esq.
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300

July 12, 2011

## TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................ ii

PRELIMINARY STATEMENT ........................................................................1

ARGUMENT ...............................................................................................4

    I.    The Second Circuit's Decision In *Haynes* Compels Dismissal ...................4

    II.   The Underlying Claim Against Exxon Is A Retained Liability .................8

    III.  New York Law and the Full Faith and Credit Clause of the Constitution Prohibit Application of New York Law, To the Extent It Conflicts With the Pennsylvania Workers Compensation Act .................................10

CONCLUSION ..........................................................................................16

## TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page**

*Allstate Ins. Co. v. Hague,*
    449 U.S. 302 (1981)................................................................................14

*Bester v. Essex Crane Rental Corp.,*
    422 Pa. Super. 178, 619 A.2d 304 (Pa. Super. 1993) ...........................12

*Blue Cross& Blue Shield of N.J. v Philip Morris USA Inc.,*
    3 N.Y.3d 200 (2004) .............................................................................12

*Carroll v. Lanza,*
    349 U.S. 408 (1955)................................................................................15

*Cevasco v. AMTRAK,*
    606 F. Supp. 2d 401 (S.D.N.Y. 2009) .....................................................6

*Cooney v. Osgood,*
    81 N.Y.2d 66 (1993) ..............................................................................12

*George A. Fuller Co. v. Fischbach & Moore, Inc.,*
    180 N.Y.S.2d 589 (1st Dep't 1958) ..........................................................7

*GlobalNet Fin. Com., Inc. v. Frank Crystal & Co., Inc.,*
    449 F.3d 377 (2d Cir. 2005) .....................................................................4

*Haynes v. Kleinewefers & Lembo Corp.,*
    921 F.2d 453 (2d Cir. 1990) ..........................................................1-2, 4-6

*Hogeland v. Sibley, Lindsay & Curr Co.,*
    366 N.E.2d 263 (N.Y. 1977).....................................................................4

*Koch Ind., Inc. v. Aktiengesellschaft,*
    727 F. Supp. 2d 199 (S.D.N.Y. 2010) ......................................................5

*Kruzits v. Okuma Machine Tool, Inc.,*
    40 F.3d 52 (3d Cir. 1996) .......................................................................12

*Kurek v. Port Chester Housing Authority,*
    223 N.E.2d 25 (1966) ...............................................................................7

*Lehman Bros. Comm. Corp. v. Minmetals Intern. Non-Ferrous Metals Trading Co.,*
    179 F. Supp. 2d 118 (S.D.N.Y. 2000) ....................................................11

*Levine v. Shell Oil Co.,*
　　28 N.Y.2d 205, 269 N.E.2d 799 (1971)................................................................4, 7

*Liff v. Consol. Edison Co. of N.Y.,*
　　286 N.Y.S.2d 354 (1968)...................................................................................7

*Marine Midland Bank, N.A. v. United Missouri Bank, N.A.,*
　　223 A.D. 119, 643 N.Y.S.2d 528 (1st Dep't 1996)...................................11, 13

*McIlvaine Trucking, Inc. v. W.C.A.B.,*
　　570 Pa. 662 (2002).........................................................................................12

*Pacific Employers Ins. Co. v. Industrial Accident Comm'n,*
　　306 U.S. 493 (1939)...............................................................................4, 13, 15

*Phillips Petroleum Co. v. Shutts,*
　　472 U.S. 797 (1985)................................................................................... 13-14

*Roach v. McGuire & Bennett, Inc.,*
　　146 A.D.2d 89, 539 N.Y.S.2d 138 (3d Dep't 1989)...............................................12

*Rolon v. U.S. Amada, Ltd.,* No. 95 Civ. 6231,
　　1997 U.S. Dist. LEXIS 18315 (S.D.N.Y. Nov. 13, 1997).......................................7

*Suazo v. Maple Ridge Assoc. LLC,*
　　2011 N.Y. App. Div. LEXIS 4636 (1st Dep't June 7, 2011)...............................1, 8

*Sun Oil Co. v. Wortman,*
　　486 U.S. 717 (1988)........................................................................3-4, 13-15

*Smith v. Meadow Mills, Inc.,*
　　60 F. Supp. 2d 911 (E.D. Wis. 1999).....................................................................5

*Thomas v. Washington Gas Light Co.,*
　　448 U.S. 261 (1980).........................................................................................15

*Vitty v. D.C.P. Corp,*
　　633 A.2d 1040 (N.J. Super. 1993) .........................................................................7

*Wallace v. Sherwood Constr. Co.,*
　　877 P.2d 632 (Okla. App. 1994)...........................................................................7

*XL Specialty Insurance Co. v. Agoglia,* Nos. 08 Civ 3821, 08 Civ. 4196, 08 Civ 5252,
　　2009 U.S. Dist. LEXIS 36601 (S.D.N.Y. March 2, 2009).......................................8

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.,*
　　84 N.Y.2d 309, 318 (1994)...........................................................................11, 13

**Rules and Statutes**

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 16

77 Pa. Stat. Ann. § 1 .......................................................................................12

77 Pa. Stat. Ann. § 481 ...................................................................................12

N.Y. Gen. Oblig. L. § 5-1401 ........................................................................13

**Other Authorities**

Restatement (Second) of Conflict of Laws § 187............................................11

Tredegar respectfully submits this Reply Memorandum of Law in Further Support of its Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

Tredegar and Exxon agree on two basic points. First, this action is a "straightforward indemnification dispute." Plaintiff's Memorandum of Law in Opposition Defendant's Motion to Dismiss ("Opp. Br.") at 1. Second, Exxon's claims fail as a matter of law unless the Agreement demonstrates an "unmistakable intent" for Tredegar to indemnify Exxon for employee injuries arising out of Exxon's own alleged negligence, *i.e.*, unless the Agreement <u>unambiguously</u> requires Tredegar to pay. Opp. Br. 23, 25-26. One wonders, therefore, why it would take Exxon a dozen pages in this "straightforward" dispute to argue that the Agreement unambiguously entitled it to indemnification. The inescapable fact – demonstrated by Exxon's pages of labored argumentation – is that the Agreement does not <u>unambiguously</u> entitle Exxon to indemnification. In fact, Tredegar respectfully submits that the Agreement unambiguously assigns the liability at issue to <u>Exxon</u>. But the Court need not be persuaded that the Agreement unambiguously favors Tredegar in order to grant Tredegar's motion because, under New York law, any ambiguity "compels dismissal." *Suazo v. Maple Ridge Assoc. LLC*, 2011 N.Y. App. Div. LEXIS 4636, at * 4 (1st Dep't June 7, 2011).

Thus, the "straightforward" issue for the Court is whether Exxon's alleged liability to Leo Leinheiser, the underlying tort plaintiff, <u>arguably</u> "arises out of" events before Tredegar's acquisition of the Mar-Lin Facility (when the alleged negligence occurred) or whether the alleged liability <u>unambiguously</u> "arises out of" events after the acquisition (when the alleged injury occurred). The Second Circuit decision in *Haynes v. Kleinewefers & Lembo Corp.*, 921

---

[1]   Capitalized terms used herein have the same meaning as set forth in Tredegar's moving brief.

F.2d 453 (2d Cir. 1990), is dispositive on this issue. *Haynes* makes clear, on these exact facts, that the relevant event that a post-acquisition liability "arises out of" is the pre-acquisition tortious conduct and not the post-acquisition accident or injury. *Haynes* therefore compels dismissal of the Complaint. Exxon's attempt to distinguish *Haynes* relies on a serious mischaracterization of the court's reasoning, and Exxon's reliance on factually dissimilar cases (many of which involve contracts that expressly provide for indemnification for the indemnitees' own negligence) is unavailing. Even if the Court were to apply Exxon's "but for" interpretation of "arising out of," the liability at issue would arise out of <u>both</u> the pre-acquisition tortious conduct <u>and</u> the post-acquisition injury, rendering the Agreement internally inconsistent and, therefore, ambiguous. Accordingly, even under Exxon's proffered interpretation of the relevant language, Tredegar would be entitled to dismissal of the Complaint.

Moreover, the Agreement cannot be read as unambiguously requiring indemnification because Exxon's alleged liability at least <u>arguably</u> (and, Tredegar submits, unambiguously) falls within the definition of Retained Liabilities. Section 1.67 of the Agreement provides, among other things, that "[n]otwithstanding anything to the contrary contained herein" the Retained Liabilities shall include "any liability or obligation arising out of . . . any legal proceeding commenced after the Closing Date to the extent it arises out of, or relates to, any occurrence or happening before the Closing Date." The underlying tort case against Exxon was commenced after the Closing Date and, as alleged by Mr. Leinheiser, his claim against Exxon arises out of and is related to alleged conduct by Exxon before the Closing Date. It is, therefore, a Retained Liability. Accordingly, even if the liability also could be construed as an Assumed Liability, the agreement would, at worst, ambiguous. Exxon recognizes this internal conflict, but its attempt to twist the language of the Agreement to resolve the conflict in its favor is untenable. There is simply no provision in the Agreement that says a liability that falls within the definition of both

Retained Liabilities and Assumed Liabilities must be construed as an Assumed Liability.  In fact, the Agreement provides the converse:  the items listed in Section 1.67 "shall be considered Retained Liabilities" "[n]otwithstanding anything to the contrary" in the Agreement.

Finally, even if the Court were to conclude that the Agreement unambiguously requires indemnification, the Agreement would be unenforceable under the Pennsylvania Workers Compensation Act.  Exxon does not dispute that the Pennsylvania statute, if applicable, would preclude its contractual indemnification claim but contends that the Court must apply New York law.  However, New York choice of law rules require New York courts to defer to another state's "sufficiently compelling" state interest where New York's interest is weak.  Similarly, the Full Faith and Credit Clause requires a forum state to apply a foreign state's law when the forum state has insufficient contacts with the dispute and therefore is not "competent to legislate" on the issue.

Although this dispute appears to present an issue of first impression (in New York courts or any other jurisdiction), application of well-settled principals of New York law and Supreme Court jurisprudence to the issue requires the Court to resolve any conflict between New York law and the Pennsylvania statute in favor of the Pennsylvania statute.  Exxon's opposition misapplies New York choice of law rules and proffers an incomplete analysis of the constitutional issue.  By focusing exclusively on the expectations of the parties, Exxon ignores the principles of federalism and inter-state comity underlying the Full Faith and Credit Clause, which require courts "to give both the forum State and other interested States the legislative jurisdiction to which they are entitled." *Sun Oil Co. v. Wortman*, 486 U.S. 717, 727 (1988). Regardless of whether the parties chose New York law to govern the interpretation of the Agreement, New York's interest in providing a forum for sophisticated commercial disputes does not entitle it to reach across state lines and allocate liabilities arising out of workplace

injuries occurring in Pennsylvania that are exclusively within the "legislative jurisdiction" of Pennsylvania and about which New York simply is not "competent to legislate." *Id.*; *Pacific Employers Ins. Co. v. Industrial Accident Comm'n*, 306 U.S. 493, 501 (1939).

## ARGUMENT

### I.   THE SECOND CIRCUIT'S DECISION IN *HAYNES* COMPELS DISMISSAL

Exxon buries its analysis of the relevant contract language at the back of its 36-page brief.[2]  When Exxon finally gets around to discussing the relevant language, it is forced to concede that in order for Exxon to avoid dismissal the Agreement must demonstrate an "unmistakable intent" for Tredegar to indemnify Exxon for its own negligence.  Opp. Br. at 23, 25-26.  Along the way Exxon misleadingly suggests the 1971 Court of Appeals decision in *Levine v. Shell Oil Co.*, 28 N.Y.2d 205, 211, 269 N.E.2d 799, 802 (1971), followed in 1977 by *Hogeland v. Sibley, Lindsay & Curr Co.*, 366 N.E.2d 263 (N.Y. 1977), significantly weakened New York's traditional policy disfavoring contract indemnification claims for liabilities arising out of the indemnitee's own tortious conduct.  Not so.  The Second Circuit in *Haynes* specifically rejected the contention that "the unmistakable intent standard is no longer the applicable standard and that New York now applies a less rigorous one."  *Haynes*, 921 F. 2d 456-57.  *Haynes* remains the authoritative statement of New York law on this issue in this Circuit.

*Haynes* is nearly an exact analog of the present dispute and compels dismissal of the Complaint.  Like this case, *Haynes* involved (i) a sale of a business; (ii) a purchase and sale agreement that allocated liabilities between the purchaser and seller depending on how the

---

[2]   There is no analytical reason for Exxon to begin its argument with a choice of law analysis.  Under New York law, in order to trigger a choice of law analysis one must first establish that there is a conflict between the laws of the competing jurisdictions.  *GlobalNet Fin. Com., Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 382 (2d Cir. 2005).  As demonstrated below and in Tredegar's moving brief, there is no conflict here because Exxon is not entitled to indemnification under either New York or Pennsylvania law.

liability "arose"; (iii) an injury allegedly caused by the seller's pre-sale negligence that occurred

many years after the sale; and (iv) a claim by the seller for contractual indemnification from the

purchaser. *Id.* at 454-56. Coincidentally, even the type and circumstances of the injury suffered

by the underlying tort plaintiffs are similar, as both tort plaintiffs were allegedly injured when

their respective arms were caught in industrial machines. *Id.* at 454. Critically, when the Second

Circuit applied the "arising" language, it looked to the alleged pre-sale negligence of the seller

(*i.e.*, the "negligent modification of a calendar machine") as the relevant event for determining

whether the purchaser assumed the liability, and not to the injury, itself. *Id.* at 457l; *see also*

*Koch Ind., Inc. v. Aktiengesellschaft*, 727 F. Supp. 2d 199, 212 (S.D.N.Y. 2010) (seller

responsible for liability arising out of pre-sale conduct); *Smith v. Meadow Mills, Inc.*, 60 F. Supp.

2d 911 (E.D. Wis. 1999) (same). Following the same reasoning in this case, it is clear that the

relevant "event" out of which Exxon's liability arises is Exxon's alleged pre-sale negligence.

Therefore the Agreement allocates that liability to Exxon. *See, e.g.*, Agreement, § 1.67(v)

(stating that Retained Liabilities include legal proceedings commenced after the Closing Date "to

the extent it arises out or relates to <u>any</u> occurrence or <u>event</u> happening before the Closing Date")

(emphasis added).

  Exxon tries to distinguish *Haynes* based on the fact that the contract provision at issue

was labeled "assumption of liabilities" and not "indemnification." Opp. Br. at 29. However, the

title of the provision had no relevance to the court's reasoning. It is clear that if the "assumption

of liabilities" provision had unambiguously allocated liability to the purchaser, the *Haynes* court

would have sustained the indemnification claim regardless of whether the word

"indemnification" appeared in the contract. In context, the *Haynes* court's statement that the

seller "does not contend that the language at issue expressly entitles it to indemnification"

obviously referred to the absence of any language expressly allocating liability for the seller's

own negligence and not the absence of any provision labeled "indemnification." *Id.* at 457.

Notably, the contract in *Haynes* was in at least one important respect more favorable to the seller than the Agreement here because it allocated liabilities to the purchaser whether they arose pre- or post-sale so long as they arose in "the ordinary course of business." *Id.* Although the Second Circuit found that the broader contract language in *Haynes* could be construed so as to require indemnification, it held that the contract nevertheless lacked the requisite "unmistakable intent." Exxon's attempt to distinguish *Haynes* based on the "ordinary course" language is unavailing. The critical element of the *Haynes* case is that the court analyzed whether the "negligent modification of a calendar machine" occurred the ordinary course of business and not whether the injury to the tort plaintiff occurred in the ordinary course of business. *Id.* at 457. There was no question that the injury arose in the ordinary course of the company's business. Thus, if the relevant event for purposes of the "arising" language was the accident or injury, the court would have had to sustain the seller's indemnification claim.

The other authorities on which Exxon relies are inapposite. Tellingly, Exxon does not cite to a single case involving allocation of liabilities in connection with the sale of a business, and Tredegar is not aware of any such cases imposing on the purchaser the liability for the seller's pre-sale conduct. The cases cited by Exxon involve the term "arising out of" in contractor or subcontractor agreements with very different terms, many of which included express provisions requiring indemnification by the indemnitor for the indemnitee's own negligence, and where the court was faced with very different issues. *See Cevasco v. AMTRAK*, 606 F. Supp. 2d 401, 405-06 (S.D.N.Y. 2009) (applying District of Columbia law and holding that injury arose out of the contractor's work on the site although triggered by an offsite source; contract provided that contractor would "hold Amtrak harmless from all claims or damage suits which may arise in consequence of such injuries irrespective of any negligence or fault of

6

Amtrak"); *George A. Fuller Co. v. Fischbach & Moore, Inc.*, 180 N.Y.S.2d 589, 591 (1st Dep't 1958) (holding that subcontractor was required to indemnify contractor for injuries arising out of contractor's negligence where contract provided for indemnification "whether such injuries to persons are due or claimed to be due to *any negligence* of the Sub-Contractor, the Owner, the General Contractor, his or their employees or agents or *any other person*") (emphasis in original); *Wallace v. Sherwood Constr. Co.*, 877 P.2d 632 (Okla. App. 1994) (holding under Oklahoma law that indemnitee was entitled to indemnification for its own negligence where contract only excluded liability for which indemnitee's negligence was the "sole cause" and therefore applied to liability where negligence was only the partial cause).[3]

Other cases cited by Exxon involve absolute, unqualified general indemnification provisions with no carveouts or caveats. *See Levine*, 269 N.E.2d at 801 (lease provided for indemnification for "any and all claims, suits, loss, cost and liability . . . in connection with the [leased] premises . . . or the condition, maintenance, possession or use thereof or the operations thereon"); *Liff v. Consol. Edison Co. of N.Y.*, 286 N.Y.S.2d 354, 355-56 (1968) (contract required indemnification for "any and all liability including any and all expense, legal or otherwise"); *Kurek v. Port Chester Housing Authority*, 223 N.E.2d 25, 27 (N.Y. 1966) (contract required party to indemnify and hold harmless "against any and all claims and demands of . . whatsoever kind or nature"); *Rolon v. U.S. Amada, Ltd.*, No. 95 Civ. 6231, 1997 U.S. Dist. LEXIS 18315, at *18 (S.D.N.Y. Nov. 13, 1997) (contract for sale of machine required purchaser to "indemnify, defend and save [seller] harmless against and from all liability, claims, demands, costs, losses, injuries or expenses, whatsoever and howsoever arising in connection with [the machine]"). None of these cases support Exxon's interpretation of the Agreement. In fact, the

---

[3]   The New Jersey Superior Court's decision in *Vitty v. D.C.P. Corp*, 633 A.2d 1040 (N.J. Super. 1993) is not relevant all. *Vitty* involved liability for the death of contractor's employee caused by a drunk driver.

weight of the cases cited by Exxon demonstrate that that <u>only</u> circumstances in which New York courts will require indemnification for the indemnitee's own negligence are (1) where the contract expressly provides for it or (2) where the contract contains an absolute, unqualified general indemnification provision allocating all potential liability to the indemnitor. Here, in contrast, the parties chose to do neither. Instead, they allocated potential liabilities between them depending on whether the liability arose out of events before or after the Closing Date. Because the liability here <u>at</u> <u>least</u> <u>arguably</u> arises out of alleged negligence by Exxon prior to the Closing Date, the Agreement does not reflect the requisite "unmistakable intent" required to allocate liability for Exxon's alleged negligence to Tredegar.

Finally, Exxon relies on an insurance case, *XL Specialty Insurance Co. v. Agoglia*, Nos. 08 Civ 3821, 08. Civ. 4196, 08 Civ 5252, 2009 U.S. Dist. LEXIS 36601, at *27-28 (S.D.N.Y. Mar. 2, 2009), for the proposition that "arising out of" has a "broad" interpretation and requires a "but for" causality test. Opp. Br. at 30-31. However, a "but for" test proves too much and does not help Exxon's case because, as alleged by Mr. Leinheiser, Exxon's negligence was a "but for" cause of his injury. Both Exxon's alleged negligence and Mr. Leinheiser's injury are "but for" causes of Exxon's liability because both are necessary elements of Mr. Leinheiser's claim against Exxon. Accordingly, even if the Court were to apply Exxon's interpretation of "arising out of" the Agreement would be, at worst, ambiguous on the issue Exxon's indemnification claim against Tredegar, and any such ambiguity "compels dismissal." *Suazo* 2011 N.Y. App. Div. LEXIS 4636, at * 4.

## II.   THE UNDERLYING CLAIM AGAINST EXXON IS A RETAINED LIABILITY

The Agreement does not unambiguously require Tredegar to indemnify Exxon for its pre-sale conduct for a more fundamental reason:  liabilities arising out of Exxon's pre-sale conduct are defined as Retained Liabilities. As described in Tredegar's opening brief, the Agreement

provides, as a default, that all Exxon liabilities are "Retained Liabilities" unless they fall within the specific definition of Assumed Liabilities:

> all liabilities and obligations of Seller, whether such liabilities and obligations relate to payment, performance or otherwise, arise before or after the Closing, are matured or unmatured, are known or unknown, are contingent or non-contingent, are fixed or undetermined, or are present, future or otherwise, other than the Assumed Liabilities.

Agreement, § 1.67. In addition to this general definition and "without limiting" (*i.e.*, narrowing the scope of) the general definition, the Agreement listed certain specific categories of liabilities that "[n]otwithstanding anything to the contrary" in the Agreement "shall be considered Retained Liabilities." *Id.* In other words, although the general definition of Retained Liabilities was subject to a carve-out for the Assumed Liabilities, the specifically identified categories listed in Section 1.67 were intended to be Retained Liabilities regardless of whether they might also be construed as Assumed Liabilities.

One of the specifically identified categories of Retained Liabilities is "any liability or obligation. . . commenced after the Closing Date to the extent it arises out of, or relates to, any occurrence or event happening before the Closing Date." *Id.*, § 1.67(v). Mr. Leinheiser's underlying claim against Exxon clearly (and at least <u>arguably</u>) "arises out of" and/or "relates to" Exxon's alleged pre-sale negligent conduct. Accordingly, that claim is a Retained Liability "[n]otwithstanding anything to the contrary" in the Agreement. *Id.* So even if the underlying tort claim could be construed as an Assumed Liability (and it cannot), Exxon's indemnification claim would nevertheless fail because the underlying claim is also a Retained Liability, and its specific enumeration as a Retained Liability trumps the definition of Assumed Liability.

Exxon recognizes the potential conflict between the Assumed Liabilities and Section 1.67(v) of the Retained Liabilities and the fact that such conflict is fatal to its indemnification claim. Therefore, Exxon is forced to manufacture an interpretation of the Agreement in which

the definition of Assumed Liabilities trumps the specifically enumerated categories of liability in Section 1.67. *See* Opp. Br. at 34. This interpretation, however, is clearly without merit and borders on the frivolous. Exxon argues that the "without limiting" language in the lead-in sentence to the list of enumerated Retained Liabilities – which states, in its entirety, "[n]otwithstanding anything to the contrary in this agreement, and without limiting the foregoing, the following liabilities and obligations of Seller shall be considered Retained Liabilities for purposes of this agreement" – means that each of the enumerated Retained Liabilities is subject to a carve-out to the extent it is also Assumed Liabilities. As discussed above, however, the sentence actually says precisely the opposite: "Notwithstanding anything to the contrary" in the Agreement, including the definition of Assumed Liabilities, the enumerated liabilities "shall be considered Retained Liabilities."[4] The "without limiting" language simply makes clear that the enumeration of particular categories of Retained Liabilities is not intended to exclude other types of liabilities that fall within the scope of the general definition.

Accordingly, Exxon cannot avoid the conclusion that its alleged liability to the underlying tort plaintiff is, at least arguably, a Retained Liability and therefore the Agreement cannot demonstrate an "unmistakable intent" for Tredegar to indemnify Exxon for that liability.

## III. NEW YORK LAW AND THE FULL FAITH AND CREDIT CLAUSE PROHIBIT APPLICATION OF NEW YORK LAW, TO THE EXTENT IT CONFLICTS WITH THE PENNSYLVANIA WORKERS COMPENSATION ACT

For the reasons set forth above, the Court need not reach the question of how to resolve a conflict between New York law and the Pennsylvania Workers Compensation Act because there is no conflict on these facts, and Tredegar is entitled to dismissal of the Complaint under either New York law or the Pennsylvania statute. Nevertheless, should the Court find the requisite "unmistakable intent" in the Agreement under New York law, this case would present an issue of

---

[4]  Exxon's interpretation ignores the "notwithstanding" clause completely.

first impression.  No court appears to have considered whether a forum state can apply its own law where it has no interest in the dispute, other than an interest in providing the rule of decision, when doing so would violate an important public policy of a more-interested state.  *See Lehman Bros. Commercial Corp.*, 179 F. Supp. 2d at 137.  Tredegar respectfully submits, on these facts, that the Court would be required to defer to the Pennsylvania statute under both New York law and the Full Faith and Credit Clause.  Exxon's argument to the contrary misapplies New York choice of law rules and relies on an incomplete analysis of the constitutional issue.

Exxon's mechanical application of Restatement (Second) of Conflict of Laws §187 to require an extensive "grouping of contacts" analysis (the result of which would likely be indeterminate on these facts) is inconsistent with New York law.  *See* Opp. Br. at 9-13.  Under New York law, "even in contract cases, where grouping of contacts is the primary analytical tool, in certain instances the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests, and therefore should be considered." *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 318 (1994).  Moreover, "in a proper case, a foreign State's sufficiently compelling public policy could preclude an application of New York law otherwise indicated by the grouping of contacts analysis, particularly where New York's policy is weak or uncertain." *Id.*; *see also Marine Midland Bank, N.A. v. United Missouri Bank*, N.A., 223 A.D. 2d 119, 123, 643 N.Y.S.2d 528, 531 (1st Dep't 1996) (choice of law provision may be disregarded "where the issue is of such overriding concern to the public policy of the other jurisdiction as to override the intent of the parties and the interest of this state in enforcing its own policies").

That is precisely the case here.  There can be no doubt that Pennsylvania has a strong policy interest, as expressed in its workers compensation statute and interpreting case law, in preserving a Pennsylvania employer's immunity from liability for employee injuries occurring in

11

Pennsylvania.  *Cooney v. Osgood*, 81 N.Y.2d 66, 75 (1993) ("to deny a person the immunity

granted by a worker's compensation statute of a given state would frustrate the efforts of that

state to restrict the cost of industrial accidents and to afford a fair basis of predicting what these

costs will be"); *Roach v. McGuire & Bennett, Inc.*, 146 A.D. 2d 89, 93, 539 N.Y.S.2d 138, 140-

41 (3d Dep't 1989) ("Pennsylvania's legislature has clearly and unequivocally expressed that

state's interest in having its workers' compensation law apply to all industrial accidents that

occur within its borders."); *Bester v. Essex Crane Rental Corp.*, 422 Pa. Super. 178, 619 A.2d

304 (Pa. Super. 1993); *McIlvaine Trucking, Inc. v. W.C.A.B.*, 570 Pa. 662, 672 (2002) (applying

Pennsylvania statute to in-state injury notwithstanding choice of law provision).[5]

Moreover, the Pennsylvania Workers Compensation Act expressly provides (1) that it

applies to all injuries occurring in Pennsylvania and (2) where an employee injury is caused by a

third-party, that third-party may not seek contractual indemnification from the employer unless

the contract expressly provides for it.  77 Pa. Stat. Ann. §§ 1, 481.  In light of the foregoing

authorities, Exxon's assertion that Pennsylvania has no "interest in protecting employers from

contract-based suits brought by third parties in other states" is simply wrong.

In contrast, New York has no legitimate policy interest in allocating liability for work

place injuries occurring in Pennsylvania, particularly when no New York resident or property is

involved.  Moreover, even if New York had an interest in this issue, it has no strong policy

favoring claims for contractual indemnification for the indemnitee's own tortious conduct that

---

[5] The Third Circuit's decision in *Kruzits v. Okuma Machine Tool, Inc.*, is not to the contrary.  40 F.3d 52
(3d Cir. 1996).  Although similar in certain respects to the present case, the underlying tort plaintiff in
*Kruzits* did not allege that the third party "caused his personal injury" and therefore the Pennsylvania
workers compensation statute did not apply.  *Id.* at 56; 77 Pa. Stat. § 481(b) (applying to employee injury
"caused by a third party").  Therefore, the plaintiff's claim for indemnification in *Kruzits* had "no effect
on the employer's rights and obligations under the [Pennsylvania Workers Compensation Act]" and "no
strong public policy issues [were] infringed."  Here, in contrast, Mr. Leinheiser specifically alleges that
Exxon's negligence was the proximate cause of his injury and, thus, Exxon's indemnification claim falls
squarely within the scope of Section 481(b) of the Pennsylvania statute.

would be infringed by application of the Pennsylvania statute.  To the contrary, as discussed above, such claims are disfavored under New York law and are only permitted where the contract demonstrates an "unmistakable intent" to provide for indemnification.  Thus, Pennsylvania's strong public policy is "sufficiently compelling" and precludes application of New York law.  *Zurich Ins. Co.* 84 N.Y.2d at 318.

Exxon's reliance on New York General Obligations Law § 5-1401 is misplaced.  First, nothing on the face of that provision suggests that it was intended to abrogate the common law rule that choice of law provisions must give way to another state's "overriding interest in application of its own public policy."  *See Marine Midland*, 643 N.Y.S.2d at 531.  Tredegar acknowledges that a number of district court cases have so held, *see* Opp. Br. at 6-7 (citing cases), but that interpretation has not been adopted in any decision that is binding on this Court. Moreover, Tredegar respectfully submits that those decisions are inconsistent with the fundamental canon of statutory construction that statutes in derogation of the common law will be strictly construed.  *See generally Blue Cross & Blue Shield of N.J. v Philip Morris USA Inc.*, 3 N.Y.3d 200, 206 (2004).

In any event, interpreting General Obligations Law § 5-1401 to require application of New York law, on these facts, would violate the Full Faith and Credit Clause.  New York state's interest "in enforcing parties' contractual selections of New York law" – the only New York interest identified by Exxon – does not entitle New York to reach across state lines and allocate liabilities arising out of workplace injuries occurring in Pennsylvania that are exclusively within the "legislative jurisdiction" of Pennsylvania and about which New York is not "competent to legislate."  *Sun Oil Co.*, 486 U.S. at 727; *Pacific Employers*, 306 U.S. at 501.

Exxon properly cites the standard set forth by the Supreme Court in *Phillips Petroleum Co. v. Shutts*:  "for a State's substantive law to be selected in a constitutionally permissible

manner, that State must have a significant contact or significant aggregation of contacts, creating

state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." 472 U.S.

797, 818 (1985) (*quoting Allstate Ins. Co. v. Hague,* 449 U.S. 302, 312-313 (1981) (plurality

opinion)). Exxon then argues that "[a]pplication by a state of its own laws is neither arbitrary

nor fundamentally unfair when the parties expected (and indeed agreed) that it would, or could,

apply." Opp. Br. at 20. As an initial matter, there is nothing in the Agreement to suggest that the

parties' expected any law other than the Pennsylvania Workers Compensation Act to apply to

employee injuries at the Mar-Lin Facility. Agreement, § 4.5.1. In any event, Exxon's argument

only addresses the "unfairness" component of the *Allstate* test and ignores the requirement that

the forum state have "state interests" such that its choice of law is not "arbitrary."

Fairness is not the only -- or, indeed, the principal -- purpose served by Full Faith and

Credit Clause. As the Supreme Court noted in *Phillips Petroleum*, the Full Faith and Credit

Clause "require[s] the forum to respect the laws and judgments of other States, subject to the

forum's own interests in furthering its public policy." *Phillips Petroleum*, 472 U.S. 819 (holding

that decision of Kansas court applying Kansas law to class action violated the Full Faith and

Credit Clause because Kansas lacked sufficient interests with respect to claims of non-resident

plaintiffs) (*citing Allstate*, 449 U.S. at 335-36 (Powell, J., dissenting)). Thus, the purpose of the

Full Faith and Credit contacts analysis is "to give both the forum State and other interested States

the legislative jurisdiction to which they are entitled" and to "delimit spheres of state legislative

competence." *Sun Oil Co. v. Wortman*, 486 U.S. 717, 727 (1988). Therefore, a forum state may

substitute its own law for the statutory law of another state only if the subject matter is one in

which the forum state has some legitimate interest and is therefore "competent to legislate." *Sun*

*Oil Co. v. Wortman*, 486 U.S. 717, 722 (1988) (*citing Pacific Employers*, 306 U.S. at 501).

The only New York interest identified by Exxon is the desire to provide a forum and

choice of law for sophisticated commercial disputes. However, where (as here) New York has

no connection or substantive interest whatsoever in the outcome of the issue in dispute, it is not

"competent to legislate" on that issue, particularly in the face of a sufficiently important public

policy of another state with more significant contacts. "Full faith and credit does not . . . enable

one state to legislate for the other or to project its laws across state lines so as to preclude the

other from prescribing for itself the legal consequences of acts within it." *Pacific Employers*,

306 U.S. at 504.

In *Pacific Employers*, the Supreme Court held that one state could not, by statute, impose

the limits of its workers compensation regime on another state with respect to injuries occurring

within that state. Similarly, applying General Obligations Law § 5-1401 to require application of

New York law here would permit New York to reach across state lines and infringe on

Pennsylvania's ability to legislate regarding worker injuries within its borders. That would only

be permissible under the Full Faith and Credit Clause if New York had some sovereign interest

in the outcome of the dispute. It does not. For New York to seek to apply its laws with respect

to issues that are solely internal to other states, and with respect to which New York has no

sovereign interest, would amount to a "policy of hostility to the public Acts" of other States,

which the Full Faith and Credit Clause is intended to prevent. *Carroll v. Lanza*, 349 U.S. 408,

413 (1955); *see also Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 272 (1980) (describing

the purpose of the Full Faith and Credit Clause as the prevention of "parochial entrenchment on

the interests of other States").[6]

---

[6]  Exxon's out of context citation to the *Thomas* court's statement that "a state's interest in limiting the
potential liability of business within the State is not of controlling importance" is highly misleading.
Opp. Br. at 22. In context, it is clear that the Supreme Court meant that one state's interest in limiting the
liability of businesses is trumped by another state's interest in providing compensation to its own resident
who was injured while working for a business located in that same state. *Thomas*, 448 U.S. at 280.
Nothing in *Thomas* suggests that Pennsylvania's interest in regulating injuries suffered by its own

## CONCLUSION

For the reasons set forth above and in its moving brief, Tredegar respectfully requests that Court issue an order dismissing the Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated:   New York, New York
         July 12, 2011

**WOLLMUTH MAHER & DEUTSCH LLP**

By: _____
            Michael C. Ledley

500 Fifth Avenue
New York, NY 10110
(212) 382-3300
mledley@wmd-law.com

*Counsel for Defendant Tredegar Corporation*

---

residents that occur within Pennsylvania would be trumped by New York's interest in providing the rule of decision in commercial disputes involving other states' domestic affairs that are entirely unrelated to New York.